**RECORD NO. 15-4170**

In The

# United States Court Of Appeals

## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## KAMEL O'MEEK TERRELL,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO**

_____

**BRIEF OF APPELLANT**

_____

**Michael W. Patrick**
LAW OFFICE OF
  MICHAEL W. PATRICK
**312 West Franklin Street**
**P.O. Box 16848**
**Chapel Hill, NC  27516**
**(919) 960-5848**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF SUBJECT MATTER AND
    APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.     THE COURT SHOULD VACATE AND REMAND FOR
           RESENTENCING WITHOUT USE OF THE CAREER
           OFFENDER GUIDELINE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           A.    The career offender guideline has been expanded beyond
                the congressional grant of authority and is invalid . . . . . . . . . 4

           B.    Although a sentencing court has the power to set aside the
                career offender designation based on a policy
                disagreement with U.S.S.G. § 4B1.1, the existence of the
                invalid career offender provision nevertheless improperly
                influences even variance sentences . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Kimbrough v. United States*,
  552 U.S. 85 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nijhawan v. Holder*,
  557 U.S. 29 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rita v. United States*,
  551 U.S. 339 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Spears v. United States*,
  555 U.S. 261 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Bellazerius*,
  24 F.3d 698 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Boardman*,
  528 F.3d 86 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Corner*,
  598 F.3d 411 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Gray*,
  577 F.3d 947 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. LaBonte*,
  520 U.S. 751 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Michael*,
  576 F.3d 323 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iii

*United States v. Mitchell,*
    624 F.3d 1023 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Newhouse,*
    919 F. Supp. 2d 955 (N.D. Iowa 2013) . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Parson,*
    955 F.2d 858 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Sanchez,*
    517 F.3d 651 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Thornton,*
    554 F.3d 443 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Statutes:**

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 856 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 994(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

28 U.S.C. § 994(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 995(a)(15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 995(a)(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

**Sentencing Guidelines:**

U.S.S.G. § 4A1.2(E)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S.S.G. § 4B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 11

**Rule:**

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Authorities:**

Dan Ariely *et al.*, *"Coherent Arbitrariness": Stable Demand Curves Without Stable Preferences*, *available at* http://users.nber.org/~rosenbla/econ311-05/syllabus/stabledemand.pdf.
  118 Q. J. Econ. 73 (Feb. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Dan Ariely, *Predictably Irrational, Revised and Expanded Edition*: *The Hidden Forces that Shape Our Decisions* (2009) . . . . . . . . . . . . . . . . . . . 9-10

S. Rep. No. 98–225 (1983),
  1984 U.S.C.C.A.N. 3182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.C., *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* (2004), available at http://www.ussc.gov/research-and-publications/research-projects-and-surveys/miscellaneous/fifteen-years-guidelines-sentencing . . . . . . . . . . . . . . . . . 8

U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 44 (1987), available at http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1987/manual-pdf/1987_Supplementary_Report_Initial_Sentencing_Guidelines.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Subject matter jurisdiction was conferred upon the United States District Court pursuant to 18 U.S.C. § 3231. Specifically, Defendant Kamel O'Meek Terrell was charged with two counts of violating 21 U.S.C. § 841 and one count of violating 21 U.S.C. § 856. Subject matter jurisdiction is conferred upon the United States Court of Appeals for the Fourth Circuit pursuant to 18 U.S.C. § 3742(a).

Defendant Donnell Terrell's judgment of conviction was entered on March 20, 2015. J.A. p. 49. Notice of appeal was filed on March 20, 2014. J.A. p. 55. Jurisdiction is also conferred upon the United States Court of Appeals for the Fourth Circuit pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.    DID THE DISTRICT COURT ERR IN SENTENCING KAMEL TERRELL BY USING THE CAREER OFFENDER GUIDELINE?

## STATEMENT OF THE CASE

Defendant Kamel Terrell was indicted on August 26, 2014 for two counts of distributing cocaine base or cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and one count of maintaining a dwelling for that purpose in violation of 21 U.S.C. § 856. J.A. p. 6 – 7. Mr. Terrell entered pleas of guilty to all three counts without a plea agreement on October 6, 2014. J.A. p. 8 – 25.

1

Sentencing before Hon. Thomas D. Schroeder took place on February 24, 2015. Judge Schroeder imposed a sentence of 120 months. J.A. p. 50. This appeal followed.

## I.    STATEMENT OF FACTS

Defendant Kamel Terrell is a 39 year old resident of North Carolina. J.A. p. 59. He was arrested in connection with an attempted sale of 28 grams of cocaine base to a confidential informant. J.A. p. 60. Search of his residence after his arrest found an additional 25 grams of cocaine base and 10.6 grams of cocaine hydrocholoride. *Id.*

After his guilty plea, the Probation Office prepared a Presentence Report. The PSR found a Offense Level of 26 based on drug quantity and use of the residence. J.A. p. 61, PSR ¶12 – 13. It, however, recommended that Mr. Terrell be sentenced as a career offender due to convictions occurring in 1995 and 1999. J.A. p. 62, PSR ¶ 18. This established a guideline range of Offense Level 31, Criminal History Level VI, or 188 to 235 months. J.A. p. 72, PSR ¶ 68.Without the career offender enhancement, Mr. Terrell's guideline would be Offense Level 23, Criminal History level V, or 84 to 105 months. *See* J.A. p. 62, PSR ¶ 17, 19-20.

Prior to the sentencing hearing, Defendant Kamel Terrell filed a statement of position regarding sentencing factors. J.A. p. 80 – 96. In it, Mr. Terrell noted that the

career offender predicate offenses, given their age, barely qualified Mr. Terrell as a career offender. J.A. p. 90. While conceding that the PSR correctly applied the career offender guideline as written, Mr. Terrell asserted that the career offender guidelines as adopted by the U.S. Sentencing Commission exceeded the authority granted to the Commission by Congress. J.A. p. 81. Mr. Terrell requested the court to sentence Mr. Terrell using a guideline range established without use of the career offender guideline. J.A. p. 93. The Government filed a position paper asking that the court sentence Mr. Terrell within the career offender guideline range. J.A. p. 95.

At the sentencing hearing, Defendant Terrell, through counsel, told the Court that the Defendant and the Government were now agreed to recommend a sentence of 120 months. J.A. pp. 30 – 32. Defendant Terrell announced that while he conceded, given applicable precedent,  that the PSR correctly stated the career offender guideline applied to Mr. Terrell, Defendant Terrell wished to preserve the argument that the career offender guideline was improperly enacted by the Sentencing Commission and was improperly used on the facts of his case. J.A. p. 32. The Court accepted the recommended sentence and imposed a variance sentence of 120 months on each of the three counts, to run concurrently. J.A. p. 41.

## SUMMARY OF ARGUMENT

While acknowledging that Circuit precedent has repeatedly upheld sentencing a defendant as a career offender based upon state court predicates,

3

defendant wishes to preserve this issue by arguing that the Sentencing

Commission exceeded its authority in adopting the current career offender

guideline. Without the high anchor of the career offender guideline, the defendant

would have received a lower sentence in the present case.

**ARGUMENT**

## I.    STANDARD OF REVIEW

The standard of review for a criminal sentence is reasonableness. In

considering whether the district court properly calculated a sentence's

reasonableness, the Court ordinarily reviews legal determinations *de novo* and

factual findings for clear error. *See United States v. Thornton*, 554 F.3d 443, 445

(4th Cir. 2009).

## II.    THE COURT SHOULD VACATE AND REMAND FOR RESENTENCING WITHOUT USE OF THE CAREER OFFENDER GUIDELINE.

### A.    The career offender guideline has been expanded beyond the congressional grant of authority and is invalid.

The career offender provision, U.S.S.G. § 4B1.1,  includes expansive

categories of predicate crimes under its rubric of  "controlled substance offenses"

and "crimes of violence." The vast array of potential predicates created by the

Sentencing Commission for this enhancement has been criticized by courts for

falling outside the scope of congressional intent and the Commission's power. *See,*

*e.g.*, *United States v. Bellazerius*, 24 F.3d 698, 702 (5th Cir. 1994) (commission

4

exceeded authority by including drug crimes outside plain language of statute); *United States v. Parson*, 955 F.2d 858, 874-75 (3d Cir. 1992) (includes "A Suggestion to the Commission" recommending improvement and restriction of "crime of violence").

The expansion is clear when the guideline as applied is compared with the statutory text. Congress specified which prior convictions were supposed to count for the recidivist enhancements under the guidelines. These include felonies wherein the defendant:

> (1) has been convicted of a felony that is—
>
>> (A) a crime of violence; or
>> (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46; and
>
> (2) has previously been convicted of two or more prior felonies, each of which is—
>
>> (A) a crime of violence; or
>> (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21U.S.C. 952(a), 955, and 959), and chapter 705 of title 46.

28 U.S.C. § 994(h) (2015).

This statutory list is only a tiny fraction of the predicates actually used under the regime adopted by the Sentencing Commission to determine career offender eligibility. In expanding the predicates beyond those "described in" 28

U.S.C. § 994(h), as directed by Congress, the Sentencing Commission violated the plain language of a specific directive of Congress, *United States v. LaBonte*, 520 U.S. 751, 757 (1997), because when a statute refers to offenses "described in" specific sections of the criminal code, it means those specific offenses. *See Nijhawan v. Holder*, 557 U.S. 29, 36–37 (2009); *see United States v. Newhouse*, 919 F. Supp. 2d 955, 973 (N.D. Iowa 2013).

The offenses that qualified Mr. Terrell as a career offender under U.S.S.G. § 4B1.1 are not found in § 994(h). J.A. p. 62, PSR ¶ 18. They not among the federal crimes listed in 28 U.S.C. § 994(h); they are state court convictions, for which there is no congressional mandate. Application of U.S.S.G. § 4B1.1 to Mr. Terrell is therefore an invalid exercise of delegated congressional power by the Sentencing Commission.

**B.    Although a sentencing court has the power to set aside the career offender designation based on a policy disagreement with U.S.S.G. § 4B1.1, the existence of the invalid career offender provision nevertheless improperly influences even variance sentences.**

The expansion of the career offender guideline beyond its permissible bounds is due in part to the fact that it results from an imprecisely implemented congressional mandate. Because U.S.S.G. § 4B1.1 is not carefully tailored to the normal standards of the sentencing guidelines, many courts have found it is entitled to considerably less deference than those guidelines where the

6

Sentencing Commission has exercised its institutional expertise and utilized empirical analysis. *See United States v. Newhouse*, 919 F. Supp. 2d 955, 974 (N.D. Iowa 2013).

Following the line of Supreme Court precedent in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Spears v. United States*, 555 U.S. 261 (2009) (per curiam), several courts of appeal, have held that district courts are free to vary from the career offender guideline based on policy disagreements with it. *See United States v. Gray*, 577 F.3d 947, 950 (8th Cir. 2009) (holding that district court did not "misunderstand its authority to vary from the career offender guideline" on the basis of policy disagreements, thus implying that a district court has authority to vary from career offender guideline based on policy disagreements with it); *United States v. Mitchell*, 624 F.3d 1023, 1028–30 (9th Cir. 2010); *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) (en banc); *United States v. Michael*, 576 F.3d 323, 327–28 (6th Cir. 2009); *United States v. Boardman*, 528 F.3d 86, 87 (1st Cir. 2008); *United States v. Sanchez*, 517 F.3d 651, 662–63 (2d Cir. 2008).

As demonstrated by the line of cases cited above establishing the courts' authority to depart from career offender guideline calculations for policy reasons, the career offender provision should be entitled to even less deference than most guideline provisions because it does not have a sound empirical basis. The

7

Sentencing Commission is supposed to study and evaluate guidelines provisions

so that sentencing is based on empirical data. 28 U.S.C. §§ 995(a)(15), (16)

(2013). But the Commission's report–which was belatedly written many years

after the guideline took effect–shows career offender is not empirically based and

metes out more severe punishments than warranted. U.S.S.C., *Fifteen Years of*

*Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice*

*System is Achieving the Goals of Sentencing Reform* at 47 (2004), available at

http://www.ussc.gov/research-and-publications/research-projects-and-surveys/mis

cellaneous/fifteen-years-guidelines-sentencing (hereinafter "Fifteen Year

Review") ("[T]he Commission established guideline ranges that were significantly

more severe than past practice" for "the most frequently sentenced offenses in the

federal courts," including the career offender guideline.). However, unlike the

guidelines development process described in *Rita v. United States*, 551 U.S. 339

(2007), the Sentencing Commission did not use empirical data of average

sentences, pre-guidelines, as the starting point for the Career Offender guideline.

*See* 28 U.S.C. § 994(m); S. Rep. No. 98–225, at 116 (1983), 1984 U.S.C.C.A.N.

3182, 3299 (noting that under the sentencing guidelines "the average time served

should be similar to that served today in like cases"). Instead, as the Sentencing

Commission said, "much larger increases are provided for certain repeat offenders,

8

consistent with legislative direction" than under pre-guidelines practice. *See* U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 44 (1987), available at http://www.ussc.gov/ sites/default/files/pdf/guidelines-manual/1987/manual-pdf/1987_Supplementary_ Report_Initial_Sentencing_Guidelines.pdf. As a result, the Career Offender sentencing ranges were set at or near the maximum term, regardless of whether the resulting sentences met the purposes of sentencing, created unwarranted disparity, or conflicted with the "parsimony provision" of 18 U.S.C. § 3553.

Even in a case like the present one where the sentencing court imposes a variance sentence, the influence of the career offender guideline will continue to inflate criminal sentences. First of all, sentencing courts are directed to consider the guideline range. Secondly, there are numerous behavioral studies that indicate that previously mentioned numbers, even if they are known by the decision maker to be entirely arbitrary, act as anchors and continue to exert an irrational influence on the decision maker. This phenomenon has been shown to persist in a wide range of situations in extensive studies done by social scientists. Dan Ariely, a behavioral economist at Duke University, has written extensively and conducted numerous experiment on the anchoring phenomenon. *See*, *e.g.* Dan Ariely,

9

*Predictably Irrational, Revised and Expanded Edition*: *The Hidden Forces that Shape Our Decisions* (2009).

Anchoring is a phenomenon in which the value assigned to a thing is influenced by an earlier mention of an arbitrary number. The perhaps most famous experiment was conducted by Tversky and Kahneman, show that the numbers that came up on a wheel of fortune spun before students were asked to estimate the number of countries in Africa substantially affected the estimates made. Dan Ariely *et al.*, *"Coherent Arbitrariness": Stable Demand Curves Without Stable Preferences*, 118 Q. J. Econ. 73, 75 (Feb. 2003), *available at* http://users.nber.org/~rosenbla/econ311-05/syllabus/stabledemand.pdf. Dan Ariely, a behavioral economist at Duke University, has conducted experiments in which test subjects were asked whether they'd be willing to pay a randomly-determined amount of money for unfamiliar products, and were then asked to bid on the products. The experiments showed that subjects who were initially asked about higher price valuations bid higher for the products than did people who were initially asked about lower price valuations. This "anchoring" concept challenges the assumption that the value assigned to a thing is derived from the intrinsic value of the thing, suggesting that the values assigned are at least somewhat arbitrary. *Id*. at p. 101.

10

Mr. Terrell's case illustrates the failings of U.S.S.G. § 4B1.1 and the need for careful consideration of the all the sentencing factors, including the individual defendant's characteristics and circumstances. Even though a variance sentence was imposed, the effect of the career offender guideline persisted. Before his current convictions, Mr. Terrell's last felony conviction was in February of 2000. J.A. p. 65, PSR ¶ 29. His other qualifying felonies occurred even more remotely, in 1995, when Mr. Terrell was only 19 years old. Indeed, these older convictions are so remote that, had they occurred only months earlier, Mr. Terrell would not qualify as a career offender. *See* U.S.S.G. § 4A1.2(E)(1).

Now, at age 39, these convictions, which are separated in time from his current conviction by a period of almost twenty years, technically qualified Mr. Terrell as a career offender, and subjected him to the harshest enhancement offered under the guidelines. Without the U.S.S.G. § 4B1.1 designation, Mr. Terrell would have a criminal history category of V and a total offense level of 23. His guideline range would be 84-105 months. Applying career offender increased his guideline range to 188-235 months.

This increase was disproportionate given his criminal history. It also fails to account for the fact that Mr. Terrell was not behaving criminally nor was he making a living as a criminal for the majority of his life, particularly in the most

11

recent ten-plus years. As reflected in the PSR and attached exhibits, Mr. Terrell ran a local sports bar in Burlington until 2013, when the bar closed. J.A. p. 72, PSR ¶ 64. He also started his own business planning and promoting parties, which he operated from approximately 2002-14. *Id*. Mr. Terrell used his businesses not only to make a living, but also to benefit the community, as shown in the exhibits about the fund raisers he helped organize to benefit community members in need, using both his promotional acumen and his business.

Mr. Terrell has not only worked steadily, he has held multiple jobs. In addition to running his own businesses, he worked part-time at a men's clothing store in Burlington from 2009-14, and was also recently employed at Schewel's Furniture in Burlington. J.A. p. 71, PSR ¶¶ 62-63. Despite the fact that Mr. Terrell only worked there briefly, his supervisor at Schewel's readily provided a letter of reference and indicated the company would like to rehire Mr. Terrell if he were free. J.A. p. 71; PSR ¶ 62.

Whatever Mr. Terrell's faults or past mistakes, he is a person who has given a great deal of himself to others. He is a hard-working and talented person. He does not fit the profile of a high-risk recidivist, necessitating the outsized and broadly-tailored punishment indicated by the career offender guideline. As applied to Mr. Terrell, the career offender guideline goes afoul of the foundational

12

precepts of federal sentencing: carefully considered, individualized sentences, which avoid unwarranted disparities (including unwarranted similarities) among defendants.

In summary, Defendant Terrell suggests that the career offender guideline that applied in this case despite the fact that it was triggered by state court convictions not included in the congressional directive, served as an anchor for the ultimate sentence imposed on him which was above the non career offender guideline range. Because of the effect of the career offender guideline in anchoring his ultimate variance sentence, the Court should find that the 120 months sentence imposed was unreasonable and remand for re-sentencing without consideration of the career offender guideline.

## CONCLUSION

For the foregoing reasons Defendant Kamel Terrell requests that the Court vacate the judgment of conviction and remand the case to the District Court for re-sentencing.

Respectfully submitted this the 9th day of July, 2015.

LAW OFFICE OF MICHAEL W. PATRICK

/s/ Michael W. Patrick
Michael W. Patrick
312 West Franklin Street
Post Office Box 16848
Chapel Hill, North Carolina 27516
(919) 960-5848  Fax: (919) 869-1348
mpatrick@ncproductslaw.com

*Attorney for Defendant Kamel Terrell*

14

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

> this brief contains <u>2,800</u> words, excluding the parts of the brief
> exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using
> <u>WordPerfect</u> in <u>14 point Times New Roman</u>.

Dated:  July 9, 2015                    <u>/s/ Michael W. Patrick</u>
                                        Michael W. Patrick

                                        *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 9, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219